UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MILTON LEWIS, JR., | ) No. C 08-2337 CW (PR) |
| Petitioner, | ) ORDER DENYING PETITION FOR |
| v. | ) WRIT OF HABEAS CORPUS |
| ROBERT HOREL, Warden, | ) |
| Respondent. | ) |

INTRODUCTION

This is a federal habeas corpus action filed pursuant to 28 U.S.C. § 2254 by a pro se state prisoner. For the reasons set forth below, the petition is DENIED.

BACKGROUND

In 2003, a Humboldt County Superior Court jury convicted Petitioner of two counts of assault with a semiautomatic firearm, and found true two firearm enhancement allegations. Petitioner was sentenced to twenty-two years and four months in state prison. Petitioner sought, but was denied, relief on state direct and collateral review. This federal habeas petition followed.

Evidence presented at trial demonstrates that Petitioner struck one person with a gun, and fired shots at others. The state appellate court summarized the facts as follows:

> The assaults took place around 2:00 a.m. on December 16, 2000, in the parking lot of a Denny's restaurant in Eureka. The assailant hit David Moore in the neck with a gun (count one), and fired two shots in the direction of Keenin Ephriam, Cameron Matthews, Delvin Hudson, and Lawrence Bady (count two). Over 15 witnesses [including Timothy Hair, Keion Morgan, and Tyvonne Latimer] at the scene testified to what transpired. The issue in the case was whether [Petitioner] was the assailant.
> . . . .
>
> When they were interviewed by Parris later that night, Moore, Hair and Morgan were shown two six-photo lineups: [Petitioner] was pictured in photo two in lineup one; Latimer was shown in photo two in lineup two. Latimer testified that people often confuse him with [Petitioner], especially when their hair is braided. [Footnote removed.] Moore testified that he did not see his assailant's face. Moore identified Latimer as the assailant from the photo lineups, and told Parris that he had seen his assailant get into the white Altima at the club. Hair did not identify either [Petitioner] or Latimer from the photo lineups; he thought that the man depicted in photo six in one of the lineups resembled the assailant. Morgan identified [Petitioner] as the assailant from the lineups but declined to identify him in court. Morgan described [Petitioner] at trial as a "changed man," and testified that [Petitioner] was not the one who assaulted Moore.

(Ans., Ex. 6 at 1-2 & 3.)

As grounds for federal habeas relief, Petitioner alleges that (1) the prosecutor, by committing misconduct, violated his due process right to a fair trial; (2) he was denied his right to a fair and impartial jury; and (3) his sentence is unconstitutional.

2

STANDARD OF REVIEW

A federal writ of habeas corpus may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claims: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings of the Supreme Court as of the time of the relevant state court decision. Id. at 412.

If constitutional error is found, habeas relief is warranted only if the error had a "'substantial and injurious effect or influence in determining the jury's verdict.'" Penry v. Johnson, 532 U.S. 782, 795 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)).

## DISCUSSION

I.  Alleged Prosecutorial Misconduct

Petitioner claims that the prosecutor committed misconduct when, during questioning of an investigating officer and in his closing argument, he called attention to the fact that Petitioner did not ask for a "live line-up" during the investigation. (Pet., Addendum to P. & A. at 3-4.) By so doing, the prosecutor, according to Petitioner, called attention to Petitioner's exercise of his right to remain silent, an act that violated his constitutional rights as defined in Griffin v. California, 380 U.S. 609 (1965), and Doyle v. Ohio, 426 U.S. 610 (1976).

The relevant facts are as follows:

> After [Detective] Parris was cross-examined on his lineup procedures, the prosecutor asked him, "Now, you are aware, were you not, that prior to the time of the preliminary hearing, [Petitioner] is entitled to demand a live lineup?" When Parris said, "yes," the prosecutor asked whether [Petitioner] had made any such demand. Before Parris could answer, defense counsel objected that this questioning "unfairly shifts the burden," and "is akin . . . to a Doyle error." (Doyle v. Ohio (1976) 426 U.S. 610 [ ] [prohibiting use of defendant's postarrest, post-Miranda silence to impeach the defense case].) Counsel moved to strike, and asked for the jury to be admonished "that what [Petitioner] says or does [in his defense] is not admissible." After the jury was excused, counsel reiterated his

4

>objection that the questioning was "tantamount to <u>Doyle</u> error." The prosecutor argued that the questioning was proper because it concerned [Petitioner's] appearance, rather than his testimony, and thus did not involve his right to remain silent. The prosecutor submitted that he could comment on [Petitioner's] failure to produce relevant evidence. The objection was overruled, the motion to strike was denied, and there was no further examination on the subject.
>
>The defense maintained in closing argument that Latimer had committed the assaults, and that the identifications of [Petitioner] were suspect because the photo lineups were tainted. Defense counsel noted that [Petitioner] was the only one in the photos who matched the descriptions of the assailant as someone with braids tied back. [ ] He argued that only one lineup, with [Petitioner's] photo and a recent photo of Latimer, should have been used. He also observed that the defense did not "need to prove anything."
>
>The prosecutor responded, without objection, that "we know from Detective Parris, you know, that [Petitioner] has a right to a live lineup. Bring the witnesses in, see them in the flesh. You don't have to -- there's some concern about the validity of the identification. You have a right to that. No such lineup was ever requested. Parris didn't put one on because Parris was satisfied with the -- with the accuracy of the identifications that he had. No need for it. This -- this kind of argument where you're saying that you've got a tainted lineup and all of this is something that could have been cleared up early on and wasn't, that's akin to me -- to like the Mendes (sic) brothers who killed their parents and then come into court and say: 'Feel sorry for me because I'm -- I'm an orphan.[']"

(Ans., Ex. 6 at 10-11.)

The state appellate court rejected Petitioner's claim on grounds that the prosecutor's comments were reasonable responses to the central defense theory that Petitioner was not the perpetrator:

>[Defense] [c]ounsel argued to the jury that the two lineups Parris used were inappropriately suggestive,

5

>     and that witnesses should have been shown a third
>     lineup with a photo of [Petitioner] and a more recent
>     one of Latimer.  The prosecution could properly respond
>     to those criticisms by showing that [Petitioner] did
>     not pursue a potential remedy:  he could have requested
>     a live lineup that might have eliminated his professed
>     concerns."

(Id. at 12.)

Griffin error occurs, and a defendant's privilege against self-incrimination violated, where a prosecutor on his own initiative asks the jury to draw an adverse inference from a defendant's silence, or to treat the defendant's silence as substantive evidence of guilt.  Griffin, 380 U.S. at 615.  While it is proper for the prosecution to address the defense arguments, a comment is impermissible if it is manifestly intended to call attention to the defendant's failure to testify, or is of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify.  See Lincoln v. Sunn, 807 F.2d 805, 809 (9th Cir. 1987) (citing United States v. Bagley, 772 F.2d 482, 494 (9th Cir. 1985).  Doyle error occurs when the prosecutor comments on or uses a defendant's post-arrest silence after Miranda[1] warnings have been given.  Doyle, 426 U.S. at 611.

Here, Petitioner has not shown that the prosecutor committed misconduct, or that his constitutional rights were violated under Griffin or Doyle.  The record reflects that the prosecutor made permissible comments on the state of the evidence and on the

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

6

related arguments raised by the defense, rather than calling attention to Petitioner's right to remain silent or declination to testify. Petitioner raised the issue of the validity of his identification, and thereby invited the prosecutor's response. He cannot now plausibly argue that the prosecutor's comments were manifestly intended to call attention to his right to remain silent, or that the prosecutor was acting on his own initiative. Petitioner's claim is DENIED.

II. Jury Selection

Petitioner claims that the trial court violated his rights to Equal Protection by allowing the prosecutor to exclude the sole prospective African-American juror. (Pet., Addendum to P. & A. at 10.) The state appellate court rejected this claim, concluding that "even assuming that a prima facie case of discrimination had been established, the prosecution met the burden of showing that the challenge was not predicated on group bias." (Ans., Ex. 6 at 21.)

The relevant facts are as follows:

> The juror [at issue] here, S. G., indicated that a brother and cousin had been convicted of criminal offenses. She did not know her brother's offense, but said that he had failed to meet with his probation officer. She said she had graduated from HSU with a major in forestry, and had worked seasonally in the Forest Service for 10 years as a file and forest technician. She had worked part time as a security guard at College of the Redwoods, and was currently a direct care worker in a nursing home. She had some law enforcement training at the Forest Service and College of the Redwoods. She was trained to write citations in areas she patrolled for the Forest Service, and wrote

7

> tickets at College of the Redwoods.  The training was
> "really just the basics like, um, how to maintain your
> appearance, your stance . . . who in the hierarchy, who
> would you call on if the situation would rise to
> something out of my hands."  Her work had not led to
> involvement in a criminal case; a confrontation she had
> with someone while working at the Forest Service was
> resolved without any charges being brought.  She
> described herself as "unbiased" and "open minded."
> When asked by defense counsel whether she thought she
> would be a good juror, she said, "Yes.  I know I
> would."
>
> The first of the six peremptory challenges the
> prosecutor used was against S. G. The defense brought a
> Wheeler[2] motion, indicating that S. G. was the only
> African-American "in the entire venire," and arguing
> that she had "expressed no reservations about her
> ability to be fair.  She's got experience, family
> related experience with the criminal justice system.
> She's worked in a, sounds like, a quasi law enforcement
> capacity and had some basic law enforcement training.
> She's well educated."  Defense counsel could "think of
> no reason why a peremptory challenge ought to be
> granted."
>
> . . . [In response to the Wheeler motion] [t]he
> prosecutor noted that S. G.'s brother and cousin had
> been convicted of crimes, and "found [it] highly
> unusual" that she was unaware of the charges against
> the brother.  He admitted that the potential jurors
> were not "excited about the voir dire process," but
> noticed that S. G. had her arms crossed  before any
> questions were asked and "appeared to be especially
> bored."  He saw that S. G. sat apart from the rest of
> the jurors during a break; that behavior and the
> confrontation she reported having at the Forest Service
> made him worried that she would not get along with the
> other jurors.  He found S.G.'s claim to law enforcement
> training somewhat "self-inflating," and suspected that
> she had been fired from the Forest Service because she
> no longer worked there despite having a forestry
> degree.  He thought that defense counsel had a rapport
> with S. G. and that she was "overly impressed" with

---

[2] In California, a party who believes his opponent is using his peremptory challenges to strike jurors on grounds of group bias alone may raise the point by way of a timely motion under People v. Wheeler, 22 Cal. 3d 258, 280 (1978).

8

> defense counsel; he worried that he might "have offended [S. G.] in some fashion." He pointed out that many prosecution witnesses, as well as [Petitioner], were African-Americans.
>
> Defense counsel replied that he had not observed anything suggesting that S. G. would be unfit to serve on the jury. Counsel thought much of what the prosecutor said was "sheer speculation"; S. G., for example, might have left the Forest Service voluntarily and not been fired. Counsel submitted that S. G. was attentive, honest, and articulate in voir dire. It was "transparent" to him that the prosecutor did not want an African-American juror in a case against an African-American defendant.
>
> The court ruled that the defense had not made a prima facie case that S. G. was excused because of her race, and that the prosecutor had in any event given valid neutral reasons for the challenge. The court found the defense reasoning on the matter "conclusory," and thought it not at all unusual that the prosecution would want to remove someone, regardless of race, whose brother was having problems on probation. The court also observed that it did not find the prosecutor's voir dire of S. G. "in any way disproportionate to the other people. He didn't have it already set up."

(Id. at 20-21.)

The use of peremptory challenges by either the prosecution or defendant to exclude cognizable groups from a petit jury may violate the Equal Protection Clause. See Georgia v. McCollum, 505 U.S. 42, 55-56 (1992). In particular, the Equal Protection Clause forbids the challenging of potential jurors solely on account of their race. See Batson v. Kentucky, 476 U.S. 79, 89 (1986). Batson permits prompt rulings on objections to peremptory challenges pursuant to a three-step process. First, the defendant must make out a prima facie case that the prosecutor has exercised peremptory challenges on the basis of

9

race "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." Id. at 93-94. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Id. at 97; Wade v. Terhune, 202 F.3d 1190, 1195 (9th Cir. 2000). Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. Batson, 476 U.S. at 98; Wade, 202 F.3d at 1195. A federal habeas court need not dwell on the first step of the Batson analysis if the matter has proceeded to the second or third step. "Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant has made a prima facie showing becomes moot." Hernandez v. New York, 500 U.S. 352, 359 (1991).

To fulfill its duty, the court must evaluate the prosecutor's proffered reasons and credibility in light of the totality of the relevant facts, using all the available tools including its own observations and the assistance of counsel. Mitleider v. Hall, 391 F.3d 1039, 1047 (9th Cir. 2004). In evaluating an explanation of racial neutrality, the court must keep in mind that proof of discriminatory intent or purpose is required to show a violation of the Equal Protection Clause. See Hernandez, 500 U.S. at 355-62. It also should keep

10

in mind that a finding of discriminatory intent turns largely on the trial court's evaluation of the prosecutor's credibility. Rice v. Collins, 546 U.S. 333, 340-42 (2006).

The findings of the state trial court on the issue of discriminatory intent are findings of fact entitled to the presumption of correctness in federal habeas review, see Purkett v. Elem, 514 U.S. 765, 769 (1995), as are the findings of the state appellate court. See Mitleider, 391 F.3d at 1050; Williams v. Rhoades, 354 F.3d 1101, 1108 (9th Cir. 2004). Under AEDPA, this means that a state court's findings of discriminatory intent are presumed sound unless a Petitioner rebuts the presumption by clear and convincing evidence. Miller-El, 545 U.S. at 240. A federal habeas court may grant habeas relief only "if it was unreasonable to credit the prosecutor's race-neutral explanations for the Batson challenge." Rice, 546 U.S. at 338-41.

Applying these legal principles to the instant matter, the Court concludes that Petitioner has not rebutted the presumption that the state court's conclusion was a reasonable one, as an analysis under Batson and other relevant case law demonstrates. The Court need not consider the first step of the Batson analysis because (a) the prosecutor offered the racially-neutral reasons of S. G.'s brother's conviction and his problems with probation and her physical gesture of lack of interest, and (b) the trial court ruled on the ultimate question of intentional discrimination. With respect to the second Batson step, the

11

Court finds nothing in the record to disprove the prosecutor's stated reasons. As the state appellate court found, the prosecutor's stated reasons were based on statements made by S. G., and on the prosecutor's observations of the juror's physical demeanor in court. Because the transcript contains only the words spoken in court, this Court must defer to the prosecutor's description of S. G.'s physical behavior. As to the third <u>Batson</u> step which queries whether there was intentional discrimination, Petitioner has not shown clear and convincing evidence to rebut the presumption that the trial court's determination was correct, or shown why this Court should favor Petitioner's interpretation of the record over the trial court's credibility determination.

A comparative juror analysis, a review required by <u>Green v. Lamarque</u>, 532 F.3d 1028, 1031 (9th Cir. 2008) where, as here, the trial and appellate courts did not engage in such a review, does not change this conclusion. The prosecutor relied not only on S. G.'s answers regarding her life experiences, her brother, and her experience in law enforcement, but also on her physical demeanor. On that last point, the transcript contains only the verbal responses of the jurors, not any description of the other jurors' demeanor, let alone whether their demeanor was similar to S. G.'s. Also, Petitioner does not dispute the prosecutor's description of S. G.'s demeanor. Furthermore, Petitioner does not point to any other juror who was similarly situated to S. G. in responses and demeanor, let alone one that was treated

12

differently, nor does a review of the record disclose such a juror. Taking these facts into consideration, the Court concludes that Petitioner has not shown evidence that non-African-American jurors who were similar to S. G. in their demeanor, and in their responses, were treated differently. Accordingly, Petitioner's claim is DENIED.

III. Sentencing

Petitioner claims that the trial court violated his rights under the Sixth Amendment when it imposed (1) the aggravated sentence for the assault conviction, and (2) the aggravated sentence enhancement for the personal use of a firearm finding. (Pet., P. & A. at 26-28.) The state appellate court did not address these claims in its written opinion.

The trial court sentenced Petitioner as follows. It imposed the upper term of nine years for the second count of assault on grounds that the circumstances in aggravation outweighed those in mitigation -- in fact, the trial court found no circumstances in mitigation. (Ans., Ex. 2, Vol. 6 at 1990-91.) The circumstances cited in aggravation were: the crime involved great violence and threat of great bodily harm, Petitioner was on probation at the time the offense occurred, Petitioner's performance on parole had been unsatisfactory, and Petitioner had not accepted responsibility for his crime. (Id. at 1991.) The trial court also imposed the upper term of ten years for the personal use of a firearm enhancement, which was attached to the second count of

13

assault, also on grounds that the aggravating circumstances outweighed the mitigating ones. (Id.) The firearm enhancement allegation had been found true by the jury. (Id.)

The Sixth Amendment requires that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 490 (2000). The "statutory maximum" discussed in Apprendi is the maximum sentence a judge could impose based solely on the facts reflected in the jury verdict or admitted by the defendant; in other words, the relevant "statutory maximum" is not the sentence the judge could impose after finding additional facts, but rather the maximum that could be imposed without any additional findings. Blakely v. Washington, 542 U. S. 296, 303-04 (2004). In California, the middle term is deemed the statutory maximum, and thus the imposition of the upper term, such as in the instant case, can implicate a criminal defendant's Apprendi rights. See Cunningham v. California, 549 U.S. 270, 293 (2007).

In California, sentencing courts are to consider various aggravating and mitigating factors in determining whether to impose an upper term. See Cal. Rules of Court 4.421 & 4.423. A single aggravating factor is sufficient to authorize a California trial court to impose the upper term. People v. Osband, 13 Cal. 4th 622, 728 (1996). Aggravating factors include: the crime

14

involved great violence or threat of great bodily harm, see Cal. Rules of Court 4.421(a)(1), the defendant was on probation or parole when the crime was committed, and the defendant's performance on parole was unsatisfactory, see id. at (b)(3)-(4).

Petitioner's upper term sentence for the assault conviction appears to be erroneous under Cunningham. Specifically, the factors used by the trial court were not based on facts admitted by Petitioner or reflected in the jury's verdict, but rather on the trial court's independent findings. The imposition of the upper term, increasing Petitioner's sentence beyond the statutory maximum, was based on these factors. However, Blakely and Apprendi sentencing errors are subject to a harmless error analysis. Washington v. Recuenco, 548 U.S. 212, 221 (2006). Applying Brecht v. Abrahamson, 507 U.S. 619 (1993), the Court must determine whether "the error had a substantial and injurious effect" on Petitioner's sentence. Hoffman v. Arave, 236 F.3d 523, 540 (9th Cir. 2001) (internal quotation marks omitted). Under that standard, the Court must grant relief if it is in "grave doubt" as to whether a jury would have found the relevant aggravating factors beyond a reasonable doubt. O'Neal v. McAninch, 513 U.S. 432, 436 (1995). Grave doubt exists when, "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." Id. at 435.

The Ninth Circuit has held that a sentencing court's

determination that an offense was committed while the defendant was on probation does not come within the prior offense exception, Butler v. Curry, 528 F.3d 624, 641 (9th Cir. 2008), but also has concluded that the Butler holding is not clearly established Supreme Court law, so cannot be the basis for federal habeas relief, Kessee v. Mendoza-Powers, 574 F.3d 675, 679 (9th Cir. 2009).

Applying these legal principles to the instant matter, the Court concludes that the error was harmless. In sum, sufficient evidence exists in the record to support a conclusion that a jury would have found the relevant aggravating factors beyond a reasonable doubt. Petitioner beat one victim with a gun, and shot at a crowd of persons. On such evidence, the Court does not have "grave doubts" whether the jury would have found the aggravating factor that the crime involved great violence and great bodily harm. Furthermore, Petitioner has never disputed the trial court's assertion that he was on probation at the time of the offense. Again, on such evidence, the Court does not have "grave doubts" as to whether a jury would have found that Petitioner was on probation at the time of the offense true beyond a reasonable doubt. Accordingly, the Court must deny Petitioner habeas relief on his sentencing claim regarding his assault conviction.

Petitioner's claim as to his sentencing enhancement is without merit. The trial court imposed the upper term of ten

16

years based on undisputed facts in the record which comport with the relevant aggravating factor in Cal. Rule of Court 4.421(b)(1), which states: "defendant has engaged in violent conduct that indicates a danger to society." More specifically, the trial court relied on Petitioner's age, his history of engaging in violent conduct, which indicated that he was a serious danger to others, his substantial juvenile criminal history, his commitment to the California Youth Authority, his possession of loaded pistol, and his felony conviction for discharging a firearm at an occupied vehicle. (Ans., Ex. 2, Vol. 6 at 1991.) On such a record of serious and increasing criminality, the Court does not have "grave doubts" that a jury would have found the aggravating factor that Petitioner posed a danger to society true beyond a reasonable doubt. Accordingly, Petitioner's Apprendi rights were not violated.

Petitioner's sentencing claims are DENIED.

## CONCLUSION

The state court's denial of Petitioner's claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the

constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals.

The Clerk shall enter judgment in favor of Respondent, and close the file.

IT IS SO ORDERED.

DATED: 3/28/2011



CLAUDIA WILKEN
United States District Judge

<i><b>United States District Court<br>For the Northern District of California</b></i>

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MILTON LEWIS JR, | Case Number: CV08-02337 CW |
| Plaintiff, | **CERTIFICATE OF SERVICE** |
| v. | |
| ROBERT HOREL et al, | |
| Defendant. / | |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 28, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Milton J. Lewis T48953
Pelican Bay State Prison
P.O. Box 7500
Cresent City, CA 95531

Dated: March 28, 2011

                                            Richard W. Wieking, Clerk
                                            By: Nikki Riley, Deputy Clerk